UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VITINA M. BURNS,

                Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

                Defendant.

Case No. C16-5606 RSM

**ORDER ON SOCIAL SECURITY
DISABILITY**

## I.     INTRODUCTION

     Vitina M. Burns brings this action pursuant to 42 U.S.C. §§ 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Title II and Title XVI of the Social Security Act. This matter has been fully briefed and, after reviewing the record in its entirety, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.     BACKGROUND

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

In March 2008, Ms. Burns applied for DIB and SSI, alleging disability as of July 18, 2001. Tr. 1077. Ms. Burns' applications were denied initially and on reconsideration. *Id.* Thereafter Ms. Burns amended her alleged onset date to May 31, 2007. *Id.* On January 6, 2011, Administrative Law Judge ("ALJ") Verrell Dethloff conducted a hearing. On January 28, 2011, ALJ Dethloff issued a decision finding Ms. Burns was not disabled from May 31, 2007 through March 25, 2009, but became disabled on March 26, 2009, and remained disabled through the date of the decision. Tr. 31-53. The Appeals Council denied Ms. Burns' request for review and she appealed to the District Court. Tr. 1-6. By order dated January 21, 2014, the District Court reversed and remanded the case for further administrative proceedings. Tr. 1184-1214. Pursuant to the District Court order the Appeals Council vacated the prior decision and remanded the case for further proceedings requiring that all of the medical evidence, including the claimant's testimony, be evaluated anew. Tr. 1215-17. On September 22, 2014, a subsequent hearing was held before ALJ Steve Lynch. Tr. 1691-1729. Impartial psychological expert Stephen Rubin, Ph. D., appeared and testified at the hearing. *Id.* A supplemental hearing was held on February 4, 2015. Tr. 1143-46. Paul K. Morrison, an impartial vocational expert, appeared and testified at the hearing. *Id.* On April 30, 2015, ALJ Lynch issued a decision finding Ms. Burns was not disabled from her alleged onset date until April 25, 2011, but became disabled on that date and has continued to be disabled through the date of the decision. Tr. 1077-1100. The Appeals Council denied Ms. Burns' request for review and Ms. Burns filed the instant action. Tr. 1067-72.

## III.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. § 405(g).

# IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

# V.  EVALUATING DISABILITY

As the claimant, Mr. Barnett bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity" (SGA). 20 C.F.R. §§ 404.1520(b), 416.920(b). [2]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

---

[2] Substantial gainful employment is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R § 404.1572.

impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled.

If drug abuse and alcoholism (DAA) is a contributing factor material to the determination of disability, a claimant cannot be considered disabled for purposes of awarding benefits. 42 U.S.C. § 1382c(a)(3)(J). Thus when DAA is present the ALJ must follow a specific analysis to determine whether it is a contributing factor material to the determination of disability. *See* 20 C.F.R. §§ 404.1535 and 416.935; *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). First, the ALJ must complete the five-step disability analysis without separating out the effects of DAA. *See Bustamante*, 262 F.3d at 956 (remanding "with instructions that the ALJ proceed with step three (and four and five, if necessary) of the disability determination without attempting to

separate out the impact of … alcohol abuse.").  If the ALJ finds the claimant disabled without separating out the impacts of DAA, the ALJ must then perform the sequential evaluation process a second time, separating out the impact of the DAA to determine whether she would remain disabled if she stopped using drugs or alcohol.  *See id.*  If the ALJ finds the claimant's remaining limitations are disabling after completing that second evaluation, then DAA is not a contributing factor material to the determination of disability and the claimant is disabled.  20 C.F.R. § 416.935(b)(2)(ii).  Even where a claimant's DAA causes her other impairment, if the other impairment is irreversible or would not improve to the point of nondisability in the absence of DAA, DAA is not material to the disability.  Social Security Ruling ("SSR") 13-2p.  On the other hand, if, after the second evaluation, the ALJ determines a claimant's remaining limitations would not be disabling, the ALJ must find that the claimant's DAA is a contributing factor material to the determination of disability and the claimant is not disabled.  20 C.F.R. § 416.935(b)(2)(i).  "The claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to [her] disability."  *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

## VI.    ALJ DECISION

The ALJ found, considering all of Ms. Burns' impairments prior to April 25, 2011, *including substance abuse*:

> **Step one:**  Ms. Burns has not engaged in substantial gainful activity since May 31, 2007, the amended alleged onset date.

> **Step two:**  Since May 31, 2007, Ms. Burns has had the following severe impairments: depression, anxiety, substance abuse or dependence, congestive obstructive pulmonary disorder (CPD), and coronary artery disease.  Beginning on the established onset date of disability, April 25, 2011, Ms. Burns has the following additional severe impairments: after effects of stroke and colon cancer with colectomy.

> **Step three:**  Since May 31, 2007, considering the effects of substance use, Ms. Burns did

not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment.[3]

**Residual Functional Capacity (RFC):**  Based on all of the impairments, including substance use disorders, the claimant had the residual functional capacity to perform medium work except she needed to avoid unprotected heights and workplace hazards. Ms. Burns could perform simple, entry-level work, could not have transactional dealing with the public, and could have only occasional interaction with coworkers.  Ms. Burns would have marked limitations in concentration, persistence, and pace, resulting [in] at least two to three absences per month.

**Step four:**  Ms. Burns could not perform past relevant work as a driver/mover or furniture mover.

**Step five:**  Considering Ms. Burns' age, education, work experience, and RFC based on all of the impairments, including substance use disorders, there were no jobs that existed in significant numbers in the national economy she could perform.

Considering Ms. Burns' impairments prior to April 25, 2011, *in the absence of substance abuse*, the ALJ found:

**Step one:**  Ms. Burns has not engaged in substantial gainful activity since May 31, 2007, the amended alleged onset date.

**Step two:**  The remaining limitations could cause more than a minimal impact on Ms. Burns' ability to perform basic work activities; therefore she would continue to have a severe impairment or combination of impairments.

**Step three:** Ms. Burns would not have an impairment or combination of impairments that meets or equals a listed impairment.

**RFC:** Ms. Burns had the RFC to perform medium work except she needed to avoid unprotected heights and workplace hazards.  Ms. Burns could perform simple, entry-level work, could not have transactional dealing with the public, and could have only occasional interaction with coworkers.

**Step four:** Ms. Burns could not perform past relevant work.

**Step five:** Ms. Burns could perform other jobs in the national economy including cook's helper, kitchen helper and janitor.

The ALJ concluded that substance abuse disorder was a contributing factor material to

---

[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

the determination of disability prior to April 25, 2011 because Ms. Burns would not have been

disabled in the absence of substance use.  Beginning on April 25, 2011, the ALJ found Ms.

Burns had the following additional severe impairments: after effects of stroke and colon cancer

with colectomy.  She had the RFC to perform light work except she needed to avoid unprotected

heights and workplace hazards.  Ms. Burns could perform simple, entry-level work, could not

have transactional dealing with the public, and could have only occasional interaction with

coworkers.  Ms. Burns was unable to perform past relevant work or other jobs in the national

economy and, as such, was disabled.  Tr. 1077-1100.

## VII.   ISSUES ON APPEAL

Ms. Burns contends the ALJ erred in: (1) evaluating the medical evidence; (2) evaluating

her own testimony; (3) finding she did not meet a Listing; (4) evaluating her RFC in the absence

of DAA; (5) finding DAA a factor material to her disability; and (6) finding that if she stopped

using drugs she could perform other jobs in the national economy at step five.  Dkt. 14 at 1-2.

Ms. Burns argues the matter should be remanded for payment of benefits or, alternatively, for

further proceedings.  *Id.* at 18.

## VIII.   DISCUSSION

### A.   Medical Evidence

The ALJ must provide "clear and convincing reasons" to reject the uncontradicted

opinion of a treating or examining doctor.  *Lester v. Chater*, 81 F.3d 821, 830, 831 (9th Cir.

1996).  When contradicted, a treating or examining doctor's opinion may not be rejected without

"specific and legitimate reasons" that are supported by substantial evidence in the record.  *Id.*

An ALJ may reject the opinion of a non-examining doctor by referring to specific evidence in the

record.  *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).  The ALJ may reject the

opinion of a non-acceptable medical source, such as a nurse practitioner, physical therapist, or counselor, by giving reasons germane to the opinion. *See Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993).

### 1. *Trevelyn Houck, Ph.D.*

On April 26, 2004, Dr. Houck examined Ms. Burns and diagnosed her with major depressive disorder with psychotic features. She found Ms. Burns markedly impaired in her ability to exercise judgment and make decisions, relate appropriately to co-workers and supervisors, interact appropriately in public contacts, and respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 228. The ALJ gave some weight to Dr. Houck's opinion including the effects of substance abuse because it was consistent with her mental status examination findings. Tr. 1087. However, the ALJ discounted the opinion in assessing Ms. Burns' functioning in the absence of substance abuse because it was not rendered during an extended period of sobriety. Tr. 1095.

Substantial evidence supports the ALJ's findings. As the ALJ notes, "contrary to Ms. Burns' testimony that she was using methamphetamines at the time of the evaluation, she failed to disclose any substance use to Dr. Houck." Tr. 1083. Ms. Burns told Dr. Houck that she had quit drinking 9 years ago and had never done drugs yet she testified at the hearing that she began using methamphetamine in 2003 and was using up to three or four days a week in 2004. Tr. 228, 1695, 1708. This was a valid reason to discount Dr. Houck's opinion with respect to Ms. Burns' functioning without the impact of substance abuse. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir.2009) (An ALJ may reject a physician's opinion based upon reports of a claimant that are found not credible); *Courtney v. Astrue*, 2012 WL 6044659 (W.D. Wash. Nov. 5, 2012) (ALJ's finding that the doctor was unaware of the claimant's full diagnostic picture,

which included drug abuse, was a specific and legitimate reason to discount the doctor's

opinions.); 20 C.F.R. § 404.1527(d)(6) (The extent to which a doctor is familiar with other

information in a claimant's case record is a relevant factor in deciding the weight to give to a

medical opinion.). Thus, the ALJ did not err in assessing Dr. Houck's opinion.

### 2. *Cherie M. Valeithian, Ph.D.*

In April 2005, Dr. Valeithian diagnosed Ms. Burns with PTSD, chronic; and major

depression, chronic, severe, with psychotic symptoms and rated her global assessment of

functioning (GAF) score as 32. Tr. 258, 264. Dr. Valeithian found Ms. Burns severely impaired

in her ability to interact appropriately in public contacts and respond appropriately to and tolerate

the pressures and expectations of a normal work setting. He found Ms. Burns markedly impaired

in her ability to understand, remember, and follow complex (more than two step) instructions,

learn new tasks, exercise judgment and make decisions, and relate appropriately to co-workers

and supervisors. Tr. 259.

Ms. Burns contends the ALJ erred in giving "great weight" to Dr. Valeithian's opinion as

evidence of her functioning including the effects of substance abuse but discounting it as

evidence of her functioning excluding the effects of substance abuse. Dkt. 14 at 4. Ms. Burns

fails to establish error. Dr. Valeithian indicated in her opinion that "there was no indication of

substance abuse" despite significant evidence in the record that Ms. Burns used

methamphetamine from 2002 through 2009 and used it three to four times a week in 2004. Tr.

327, 1708. In light of this evidence, the ALJ could reasonably conclude that Dr. Valeithian's

assessment represented Ms. Burns' functioning with substance abuse and discount the opinion as

evidence of her functioning without the impact of substance abuse. *See Bray*, 554 F.3d at 1228;

*Courtney*, 2012 WL 6044659; 20 C.F.R. § 404.1527(d)(6).

### 3. *Deborah Kabish, ARNP, and Nancy Haft, M.A.*

In April 2006, Ms. Haft[4] and Ms. Kabish completed a Department of Social and Health Services (DSHS) form indicating Ms. Burns was severely impaired in her ability to relate appropriately to co-workers and supervisors, interact appropriately in public contacts, and respond appropriately to and tolerate the pressures and expectations of a normal work setting, and markedly impaired in her ability to exercise judgment and make decisions. Tr. 267.

The ALJ discounts this opinion as representative of Ms. Burns' functioning even including the impact of substance abuse as unsupported, noting there were no mental status examination findings, treatment notes or explanation to support this assessment. Tr. 1088. An ALJ may properly discount even a treating doctor's opinion when it is brief, conclusory, and inadequately supported by clinical findings or by the record as a whole, and the ALJ reasonably did so here. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (*citing Tonapetyan*, 242 F.3d at 1149); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The DSHS form includes check boxes assessing various limitations but very little explanation as to the basis for this assessment aside from the conclusory statement that Ms. Burns had "vegetative symptoms of depression." Tr. 265-69; *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir.2012) ("[T]he ALJ may 'permissibly reject [ +] ... check-off reports that [do] not contain any explanation of the bases of their conclusions.' ") (quoting *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir.1996)). Ms. Burns argues that she attended several counseling sessions with Ms. Haft and Ms. Kabish. Dkt. 14 at 4. However, no treatment records from those sessions supporting the evaluation are included in the record.

Moreover, even if this were not a sufficient reason to discount the opinion, any error

---

[4] The ALJ appears to identify this provider as Ms. Hoyt rather than Ms. Haft. However, this appears to be merely a scriveners error and not ultimately harmful.

1 would harmless as the ALJ also properly discounted this opinion in assessing Ms. Burns'

2 functioning in the absence of substance abuse because it was not rendered during a period of

3 sobriety. Tr. 1095. Specifically, the ALJ notes that Ms. Burns told Ms. Haft and Ms. Kabish

4 that she had been sober for 10 years yet Ms. Burns herself testified that she used

5 methamphetamines from 2003 to 2009 and records from Cascade Mental Health from July 2004

6 and April 2008 indicate she admitted a history of methamphetamine use from 2002 to 2008. Tr.

7 1085, 327, 1695; *see Bray*, 554 F.3d at 1228; *Courtney*, 2012 WL 6044659; 20 C.F.R. §

8 404.1527(d)(6). Accordingly, the ALJ did not err in evaluating this opinion.

9    *4.    Keith Krueger, Ph.D.*

10    In May 2007, Dr. Krueger performed a DSHS evaluation finding that, with respect to

11 cognitive functioning, Ms. Burns had moderate limitations in her ability to understand,

12 remember, and follow complex instructions, to learn new tasks, to exercise judgment and make

13 decisions, and to perform routine tasks. Tr. 279. With respect to social functioning, Dr. Krueger

14 found Ms. Burns markedly limited in her ability to interact appropriately with coworkers,

15 supervisors, and the public, and to respond appropriately to and tolerate the pressures and

16 expectations of a work setting. *Id.* Dr. Krueger assessed similar limitations in a May 2008

17 evaluation. Tr. 270-77. The ALJ gave some weight to Dr. Krueger's assessments with respect to

18 Ms. Burns' functioning with substance use noting that "[t]he record establishes difficulties in

19 concentration, persistence, and pace, as well as some social limitations[.]" Tr. 1088. However,

20 the ALJ found the extent of the limitations noted by Dr. Krueger were inconsistent with the

21 activities he noted, namely with respect to the marked limitations in social functioning. *Id.* For

22 instance, the ALJ noted in the 2007 evaluation, Dr. Krueger indicated Ms. Burns reported she

23 "got along fine with coworkers" and at the time of the evaluation she had one friend who came

by every day.  *Id.*  Moreover, the ALJ noted in the 2008 evaluation that Ms. Burns indicated she was capable of living by herself, going to the clubhouse five days a week, and taking walks and that she still had friends, although fewer than in the past.  Tr. 272.  The ALJ reasonably found these activities inconsistent with the extent of the limitations noted by Dr. Krueger.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999) (An ALJ may discount a medical opinion that is inconsistent with claimant's daily activities.).

Moreover, the ALJ discounted Dr. Krueger's opinions in evaluating Ms. Burns' functioning without substance use because they were issued during a period where the record showed she was continuing to use methamphetamine.  Tr. 1095.  Specifically, records from Cascade Mental Health showed Ms. Burns was using methamphetamine daily in 2006 and into June 2007 and less than a month after Dr. Kruger's March 2008 evaluation Ms. Burns reported she had been clean for only two weeks.  Tr. 270-22, 669-71, 938.  Moreover, Ms. Burns did not report her methamphetamine use to Dr. Kruger during his 2007 evaluation.  Although Ms. Burns did acknowledge having used methamphetamine during the 2008 evaluation she also claimed she had quit but just a few weeks later admitted to using again.  Tr. 270-77, 669.  These were valid reasons to discount Dr. Kruger's opinions in evaluating Ms. Burns' functioning without substance abuse.  *See Bray*, 554 F.3d at 1228; *Courtney*, 2012 WL 6044659; 20 C.F.R. § 404.1527(d)(6).  Accordingly, the ALJ did not err in evaluating Dr. Kruger's opinions.

### 5.    *Tawnya Christiansen, M.D.*

In September 2008, Dr. Christiansen evaluated Ms. Burns and found she did not appear able to manage her own funds, she had limited ability to perform simple and repetitive tasks but not detailed and complex tasks, could possibly accept instructions from a supervisor but was unable to interact effectively with coworkers and the public, could not maintain regular

attendance in the workplace, complete a normal workday or workweek without interruptions

from a psychiatric condition, nor could she adequately deal with the usual stress encountered in

competitive work.  Tr. 329.  Dr. Christiansen did not think Ms. Burns could perform work

activities on a consistent basis but thought that this might improve somewhat with special or

additional supervision.  *Id.*

Ms. Burns contends the ALJ erred in giving weight to Dr. Christiansen's opinion as

evidence of her functioning including the effects of substance abuse but discounting it as

evidence of her functioning excluding the effects of substance abuse.  Dkt. 14 at 6.  Ms. Burns

contends at the time of the evaluation she was living in clean and sober housing and was

regularly attending AA.  *Id.*  However, Ms. Burns fails to establish error.  Dr. Christiansen notes

that although Ms. Burns denied any drug use except for trying marijuana at 19, this is in "stark

contrast to the notes from Cascade Mental Health of July 2004 and April 2008 wherein she

admitted a history of methamphetamine use including IV drug use between the years of 2002-

2008."  Tr. 327.  Dr. Christiansen found that although Ms. Burns did not appear to be under the

influence of drugs at the time of the evaluation, "it is quite unclear what role, if any, substance

abuse has in her pathology."  Tr. 328-29.  Thus, due to Ms. Burns' inconsistent statements

related to her drug use, Dr. Christiansen herself was unable to determine to what extent Ms.

Burns' impairments and limitations were affected by her substance abuse.  *See* SSR 13-2p (The

effects of substance abuse may take weeks or months to subside); *Courtney*, 2012 WL 6044659.

Moreover, the records show that Ms. Burns had positive drug tests in June and December 2008,

admitted to drug court in June 2008 that she had used drugs and upon opting out of drug court in

June 2008 acknowledged she began using methamphetamine again.  Tr. 613, 879, 610, 938.  In

light of the evidence of drug use during the period surrounding Dr. Christiansen's report, the

ALJ reasonably concluded this was not a period of abstinence and that the report reflected Ms. Burns' functioning including the impact of substance abuse.

### 6. *Anjan Sattar M.D., Scott Admonson, B.A., C.D.P., and Cascade Mental Health*

Ms. Burns contends the ALJ erred in failing to address GAF scores of 45 in May 2004, from Darlene Dafoe, M.A., 45 in July 2004 and April 2008, from Anjan Sattar, M.D., and 48 in October 2007, from Lorelie C. Ligasan, M.S. Dkt. 14 at 7-8; Tr. 651, 236, 662, 298. However, Ms. Burns fails to establish harmful error. The ALJ found Ms. Burns had significant limitations and was, in fact, disabled including the effects of substance abuse. The GAF scores Ms. Burns identified were all rendered during a period when, as the ALJ notes in his opinion, Ms. Burns was continuing to use drugs. For instance, Ms. Burns herself testified she used methamphetamine from 2003 through 2009, was using methamphetamine three to four times a week in 2004, told a provider she was using methamphetamine daily in 2006 and into June 2007, admitted to have been using in June 2008 and had positive drug tests in June 2008 and December 2008. Ms. Burns fails to identify any limitation established by the GAF scores assessed during this period which was not adequately accounted for by the ALJ's RFC including the effects of substance abuse. Accordingly, under the circumstances, Ms. Burns fails to establish the ALJ harmfully erred in failing to address the above GAF scores. Ms. Burns also cites various other treatment notes but none of these treatment notes establishes limitations beyond what were included by the ALJ in the RFC. Accordingly, Ms. Burns fails to establish the ALJ harmfully erred in failing to address these treatment notes as well.

Ms. Burns also argues the ALJ erred in evaluating the August 2010 opinion of her substance abuse counselor, Scott Admonson, B.A., C.D.P. Dkt. 14 at 8-9. Mr. Admonson assessed several moderate and marked limitations in the areas of understanding and memory,

sustained concentration and persistence, social interaction, and adaptation. Tr. 822-24. He also indicated Ms. Burns had a fear of crowds which caused panic attacks, she isolated and had issues with self esteem as well as difficulty focusing. *Id.* The ALJ gives Mr. Admonson's opinion some, but not significant weight. Tr. 1095. The ALJ noted that Mr. Admonson's opinion was the only opinion rendered during an extended period of sobriety. *Id.* The ALJ indicated he agreed Ms. Burns' anxiety and depression caused functional limitations, particularly with regard to cognitive functioning and social interactions, most especially with the public, but found that the RFC for simple work with limited social contact accounted for the limitations assessed by Mr. Admonson regarding the performance of detailed work, maintaining concentration for extended periods, and interacting with the public. Tr. 1096. However, the ALJ found the extent of the limitations assessed by Mr. Admonson not fully persuasive because his opinion was not "well supported, accompanied by any objective findings, and is not consistent with the record as a whole, including treatment records and the claimant's activities that show improvement and greater functioning than alleged." *Id.* An ALJ may properly discount even a treating doctor's opinion when it is brief, conclusory, and inadequately supported by clinical findings or by the record as a whole. *See Batson*, 359 F.3d at 1195. Moreover, a conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Inconsistency between a provider's opinion and a claimant's daily activities constitutes a specific and legitimate reason to discount the opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999). These were valid reasons to discount Mr. Admonson's opinion and they are supported by substantial evidence.

Specifically, as the ALJ notes, Mr. Admonson did not provide any mental status

examination findings or other evidence to support his assessment regarding the claimant's

cognitive functioning and treatment records consistently document appropriate interaction with

others and improvement with treatment and sobriety.  Tr. 1096.  The ALJ also noted that,

although Mr. Admonson assessed marked limitations in maintaining a schedule, being punctual,

and completing a normal workday or workweek, the record shows Ms. Burns complied with

treatment requirements, attended numerous individual and group appointments at Cascade

Mental Health while also attending multiple 12-step meetings per week without difficulty.  *Id.*

The ALJ further pointed out that Ms. Burns herself testified she was capable of performing

activities of daily living independently and using public transportation, contradicting Dr.

Admonson's opinion that she was markedly limited in her ability to travel in unfamiliar places or

to use public transportation.  *Id.*

The ALJ also found that, in noting Ms. Burns' symptoms of memory problems and panic

attacks, Mr. Admonson relied heavily on Ms. Burns' subjective reports.  This was another valid

reason to discount Mr. Admonson's opinion.  *See Ghanim*, 763 F.3d at 1162 ("If a treating

provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical

evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating

provider's opinion.").  As the ALJ notes, there is an absence of clinical findings or treatment

notes supporting or explaining Mr. Admonson's opinions and, as such, the ALJ could reasonably

conclude these findings were based heavily on Ms. Burns' subjective reports which the ALJ

properly discounted in evaluating her testimony.

### 7.   *Eric Paul Alexander, M.D.*

In May 2008, consultative examiner Dr. Alexander noted that Ms. Burns reported falling

and fracturing her sternum two weeks prior.  Tr. 309-13.  He opined that Ms. Burns had "good

strength" but found it would be reasonable to restrict her to lifting 10 pounds frequently and occasionally until her sternal fracture healed. Tr. 313. The ALJ properly discounted Dr. Alexander's restriction to lifting no more than 10 pounds in finding Ms. Burns' sternum impairment to be non-severe at step two of the sequential evaluation process. Tr. 1088; 20 C.F.R. §§§§ 404.1520(a)(4)(ii), 404.1509, 416.909, 416.920(a)(4)(ii) (At step two of the sequential evaluation analysis, the ALJ must determine if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month durational requirement.).

The ALJ gave specific and legitimate reasons for rejecting Dr. Alexander's opinion that she should not lift more than 10 pounds noting that Dr. Alexander's opinion was given shortly after Ms. Burns' injury and subsequent records showed it resolved and has not caused any limitations. Tr. 1088-89. The ALJ reasonably concluded there was no evidence that Ms. Burns' sternal fracture caused any persistent functional limitations. *Id.* Temporary limitations are insufficient to meet the durational requirement for a finding of disability and this was a valid reason to reject Dr. Reyes' opinion. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming ALJ's finding that treating physicians' short term excuse from work was not indicative of "claimant's long term functioning.").

Ms. Burns does not specifically challenge any of the ALJ's reasons for rejecting Dr. Alexander's opinion or in finding her sternum impairment non-severe at step two and, as such, any argument with respect to that issue is waived. *See Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 930 (9th Cir. 2003) (the court "will not consider any claims that were not actually argued in appellant's opening brief"); *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (the burden is on the party claiming error to demonstrate the error and that the error was harmful).

Rather, Ms. Burns argues only that the principles of res judicata and the law of the case prevent the ALJ from making a different finding on a prior ALJ's court-remanded decision on her claim. Dkt. 14 at 9-10. However, in its January 21, 2014 order, the district court did not directly address the prior ALJ's assessment of Dr. Alexander's opinion. Rather, the ALJ reversed and remanded the prior ALJ decision ordering that "*all* of the medical evidence should be evaluated anew following remand of this matter." Tr. 1208. Thus, in reevaluating the medical evidence, the ALJ properly reweighed Dr. Alexander's opinion. In sum, the ALJ did not err in discounting Dr. Alexander's opinion.

### 8. *Stephen Rubin, Ph.D. and Step Three*

Consulting medical expert Dr. Rubin reviewed Ms. Burns' medical records and testified at the September 22, 2014 hearing. Dr. Rubin testified that the 2008 evaluation, by Dr. Christensen, was consistent with a finding of disability. Tr. 1699. He noted that Ms. Burns showed a lot of problems at that point including depression, anxiety and a history of probably substance abuse. *Id.* Dr. Rubin also testified that, based on Dr. Kruger's 2007 opinion, Ms. Burns had a number of marked and moderate limitations even in 2007 and that, based on the opinion, she met or equaled a Listing. Tr. 1701. Dr. Rubin further testified that it also "looked like there was enough evidence for her to qualify for a disability [in 2010] though I would rather have a full evaluation even in 2010 than I had[.]" Tr. 1698. He noted, there was evidence of marked limitations in 2010, "[s]o I have a feeling, unless I have other information, that she was at a severity level which would've qualified [for disability] then." Tr. 1699.

The ALJ gave Dr. Rubin's opinion with respect to the 2008 evaluation substantial weight as to Ms. Burns' functioning "when the effects of substance abuse are considered because it is consistent with the record that documents significant symptoms during periods of substance

use[.]" Tr. 1086. However, the ALJ failed to address the other portions of Dr. Rubin's opinion entirely; namely that, based on Dr. Kruger's 2007 evaluation, Ms. Burns met or equaled a Listing and was "probably" disabled in 2010 as well. This was error. The ALJ is required to evaluate every medical opinion. *See* 20 C.F.R. § 404.1527(c) (Regardless of its source, we will evaluate every medical opinion we receive.); *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("Where an ALJ does not explicitly reject a medical opinion … he errs."). As a non-examining doctor, in order to discount Dr. Christensen's opinions, the ALJ was required to cite to other specific evidence in the record. Here, the ALJ failed to do so and the Court is prohibited from manufacturing post-hoc rationalizations on the ALJ's behalf in order to affirm the decision. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ-not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Moreover, the Court cannot "confidently conclude" that the error was harmless. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) ("[E]rrors in social security cases are harmless if they are inconsequential to the ultimate nondisability determination and … a reviewing court cannot consider an error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.") (internal citation and quotation marks omitted).

Accordingly, on remand, the ALJ should develop the record as necessary and evaluate Dr. Rubin's opinions that based on Dr. Kruger's 2007 evaluation Ms. Burns met or equaled a Listing and that she was likely disabled in 2010 as well.

**B.    Ms. Burns' Testimony**

"In assessing the credibility of a claimant's testimony regarding subjective pain or the

intensity of symptoms, the ALJ engages in a two-step analysis." *Molina,* 674 F.3d at 1112

(citing *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine

whether the claimant has presented objective medical evidence of an underlying impairment

which could reasonably be expected to produce the pain or other symptoms alleged." *Vasquez*,

572 F.3d at 591. "If the claimant meets the first test and there is no evidence of malingering, the

ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives

'specific, clear and convincing reasons' for the rejection." *Id.* (quoting *Lingenfelter v. Astrue,*

504 F.3d 1028, 1036 (9th Cir.2007)). In evaluating the credibility of a claimant's testimony, the

ALJ may consider a range of factors including prior inconsistent statements concerning

symptoms, inconsistency with the medical evidence, as well as the claimant's daily activities.

*See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Johnson v. Shalala*, 60 F.3d 1428,

1434 (9th Cir.1995). Here, the ALJ pointed out several areas in which Ms. Burns' testimony or

behavior was inconsistent with her own prior statements, the medical record and her own

activities.

The ALJ noted that the record showed Ms. Burns' mental impairments improved with

treatment and sobriety. Tr. 1093-94. Ms. Burns testified she was unable to work because she

was unable to concentrate, had a hard time being around a lot of people, and had memory

problems. Tr. 70. However, the ALJ noted that Ms. Burns' treatment notes showed significant

improvement while treating at Cascade Mental Health from 2008 through 2010. Tr. 1094.

Specifically, the ALJ noted that Ms. Burns herself reported notable improvement in her

symptoms, and the record consistently documented participation in group settings as well as

repeated appropriate interpersonal interactions with others. *Id.* Furthermore, mental status

examination findings during this period were frequently unremarkable with fair cognition and no

reports of significant difficulties with concentration or memory. Tr. 355, 854, 856, 897, 904, 909, 910, 959, 989, 1094, 1011. The ALJ noted that Ms. Burns' clean and sober date was June 10, 2009, and while the record showed some instances of increased symptoms associated with increased environmental stressors (homelessness, her mother's health, and having her car stolen) overall subsequent treatment records showed improvement and greater stability than the periods in which she was using drugs regularly. Tr. 1094. The ALJ reasonably concluded that this evidence of improvement with treatment and sobriety undermined Ms. Burns' claims of ongoing severe mental health symptoms and disability. *See Morgan*, 169 F.3d at 599.

The ALJ also noted that Ms. Burns made numerous inconsistent statements regarding her substance use, many of which are discussed above. Tr. 1095. This was also a valid reason to discount Ms. Burns' testimony. *See Verduzco v. Apfel*, 188 F.3d, 1087, 1090 (9th Cir. 1999) (relying on inconsistent statements about alcohol use to reject claimant's testimony); *accord Thomas*, 278 F.3d at 959.

The ALJ also discounted Ms. Burns' allegation of ongoing debilitating depression and anxiety as inconsistent with her documented activities which establish greater functioning. Tr. 1095. This was also a valid reason to discount Ms. Burns' testimony. *See Molina*, 674 F.3d at 1113. Specifically, the ALJ noted that at the time of the 2014 hearing Ms. Burns testified she had been clean and sober for 18 months and despite her mental health symptoms she was able to sweep floors, wash dishes and do some cooking, that she rode the bus to her appointments, occasionally went to the library to use the computer, went to the grocery store and that her friend visited once a week. *Id.* Furthermore, the treatment records indicated Ms. Burns was able to engage in appropriate interactions with peers and providers and was helpful with other clients. *Id.* The ALJ also noted that there was evidence that, during the time she was receiving regular

treatment with Cascade Mental Health (2008 through 2010), Ms. Burns spent time out with friends, went shopping, attended a baseball game, traveled to Texas for several months to visit her mother, helped a friend with her children, and was able to obtain a drivers license and a car. Tr. 1092, 1095. The ALJ reasonably concluded that these activities were "not consistent with debilitating impairments and show a greater capacity for concentration and social functioning than alleged." Tr. 1095.

Ms. Burns presents nothing demonstrating the ALJ's findings lack support in the record. Rather, she simply makes the conclusory statement that her activities are not inconsistent with her testimony or transferrable to the work setting. However, the ALJ may rely upon a claimant's activities as grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *See Molina*, 674 F.3d at 1113. This is what the ALJ did here. The ALJ considered and rejected Ms. Burns' testimony that she is disabled on the grounds that the activities discussed above show that Ms. Burns is more functional than she claims.

Thus, the ALJ properly discounted Ms. Burns' testimony.

**C.     Scope of Remand**

In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ

would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020. "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

Here, the Court finds that not all essential factual issues have been resolved. Specifically, the ALJ failed to address Dr. Rubin's medical opinions noted above. Moreover, because the record does not compel a finding of disability, the Court finds it appropriate to remand this case for further administrative proceedings. *See Treichler*, 775 F.3d at 1107.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should develop the record as necessary and evaluate Dr. Rubin's opinions that based on Dr. Kruger's 2007 evaluation Ms. Burns met or equaled a Listing and that she was likely disabled in 2010 as well. Further, based on the evaluation of Dr. Rubin's opinions, the ALJ should, as necessary, reassess Ms. Burns' impairments at step three, re-determine the RFC, and reassess steps four and five.

DATED this 13th day of October 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE